# Third District Court of Appeal

## State of Florida

Opinion filed July 11, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2538
Lower Tribunal No. 13-10649
_____

**Susan Lane,**
Appellant,

vs.

**Keith Lane,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Abramowitz and Associates, and Jordan B. Abramowitz, for appellant.

Kircher Law, P.A., and Peter H. Kircher, for appellee.

Before LAGOA, FERNANDEZ, and LINDSEY, JJ.

LAGOA, J.

Susan Lane (the "mother") appeals from the trial court's "Order on Father's

Amended Motion to Authorize Children's Enrollment at Westminster Christian

School Etc.," which (1) authorizes Keith Lane (the "father") to file applications for admission of the parties' children to Westminster Christian School ("Westminster") for the 2018-2019 academic year and to enroll the children if they are accepted, and (2) denies the mother's Verified Motion for Contempt and to Compel Father to Comply with Shared Parental Responsibility. We find that the trial court did not abuse its discretion and affirm.

I.     FACTUAL AND PROCEDURAL HISTORY

The mother and father were divorced by Final Judgment of Dissolution of Marriage on October 13, 2015, and have two minor children, P.L., born in 2006, and M.L., born in 2007. Pursuant to the Final Judgment of Dissolution of Marriage, the parties have shared parental responsibility for their minor children. For the 2017-2018 academic year, the children attended the public schools serving the district in which the mother lived. Specifically, P.L. attended sixth grade at Palmetto Middle School, and M.L. attended fifth grade at Palmetto Elementary School. The parties disagree over where the children should attend middle school for the 2018-2019 academic year. The mother would like both children to attend Palmetto Middle School,[1] while the father would like them to attend Westminster,

---

[1] It was established below that the mother was moving from Palmetto Bay to South Miami and would no longer be residing in the Palmetto Middle School district for the 2018-2019 academic year.

a private school. The father is willing to be solely responsible for the costs associated with attending Westminster.

On March 20, 2017, the mother filed a Verified Motion for Contempt and to Compel Father to Comply with Shared Parental Responsibility (the "Motion for Contempt"), arguing that the father violated shared parental responsibility when he took the parties' son to Westminster, without the mother's knowledge or consent, to have him tested to determine eligibility for entrance to the school. On September 14, 2017, the father filed his Amended Motion to Authorize Children's Enrollment at Westminster Christian School at Father's Sole Cost (the "Motion to Authorize Enrollment"). The father alleged that the mother refused to engage in discussions regarding the children's potential enrollment at Westminster. The father argued that Westminster was an excellent fit and well-suited to the talents and activities of the children, that Westminster "outpaces" Palmetto Middle School, and that he agreed to be solely responsible for the cost of attending Westminster. On October 11, 2017, the trial court held a hearing on the mother's Motion for Contempt and the Father's Motion to Authorize Enrollment. Both the mother and father testified at the hearing.

On October 18, 2017, the trial court entered its "Order on Father's Amended Motion to Authorize Children's Enrollment at Westminster Christian School Etc." (the "Order"). In its Order, the trial court granted the father's Motion to Authorize

Enrollment, finding that it would be in each child's best interest to enroll at Westminster. The Order authorized the father to file applications for admission to Westminster for the 2018-2019 academic year and to enroll the children if the applications were accepted. The Order further authorized the father to apply for early admission with the understanding that the applications must be submitted before November 1, 2017, and provided that the father shall be solely responsible for the costs charged by Westminster should the children be accepted. The Order also stated that the mother "shall cooperate with and fully support the children's applications to Westminster Christian School and their subsequent enrollment, if accepted." Finally, the Order denied the mother's Motion for Contempt.

The wife's appeal from the Order ensued. The father represented in a May 7, 2018, filing with this Court that the children have been accepted to Westminster for the 2018-2019 academic year and that the first day of school is in August 2018.

## II.   STANDARD OF REVIEW

A trial court's determination regarding the best interests of a child is reviewed for an abuse of discretion. See Young v. Hector, 740 So. 2d 1153, 1158-59 (Fla. 3d DCA 1999) (en banc). A trial court's denial of a motion for contempt is also reviewed for an abuse of discretion. See Dufour v. Damiani, 231 So. 3d 486, 488 (Fla. 4th DCA 2017); see also Milton v. Milton, 113 So. 3d 1040, 1040 (Fla. 1st DCA 2013) ("There is nothing that *requires* a trial court to hold a person

4

in contempt; the court's determination in this regard is reviewed for abuse of discretion.") (emphasis in original).

III.   ANALYSIS

Where, like here, the parents share parental responsibility but cannot reach agreement on a major decision affecting the welfare of their child, such as one concerning education, the dispute should be presented to the trial court for resolution. Dickson v. Dickson, 169 So. 3d 287, 289 (Fla. 5th DCA 2015). The trial court must resolve the impasse by determining the best interest of the child. Id. at 290; Gerencser v. Mills, 4 So. 3d 22, 23-24 (Fla. 5th DCA 2009); Sotnick v. Sotnick, 650 So. 2d 157, 159-60 (Fla. 3d DCA 1995).

On appeal, the wife argues that the trial court erred by engaging in a prospective best interest analysis where the hearing occurred in October 2017 for an academic year starting in August 2018. The wife relies upon Eisele v. Eisele, 91 So. 3d 873 (Fla. 2d DCA 2012), in support of her argument. In Eisele, a final judgment of dissolution was entered on January 18, 2011, when the parties' child was four years old. Id. at 874. On appeal, the former husband argued that the trial court erred in finding that the child could not be home schooled by either party because the child would not reach kindergarten age until approximately twenty months after the date of the final judgment. Id. The Second District found that "it was error for the trial court in this case to determine that it would be in the best

5

interest of the child to not be home schooled by either of her parents twenty months from the date of the final order," and remanded for the trial court to hold a hearing to determine whether it was in the best interest of the child, who was now almost six, to not be home schooled.[2]  Id. at 875.  We find that Eisele is factually distinguishable from the case at hand.  Specifically, the trial court's determination of whether Westminster or Palmetto Middle School was in the children's best interest occurred only ten months out from the start of the subsequent school year, and importantly, only *three weeks* out from the November 1, 2017, deadline for applications for early admission to Westminster.  Given that this ten-month time frame is half that of the twenty-month time frame at issue in Eisele and that the instant case entails an application process rather than a situation addressing home schooling that can be implemented without an application and enrollment process, we find Eisele inapposite.

---

[2]  In reaching its conclusion, the Second District Court of Appeal in Eisele, 910 So. 3d at 875, cited to Arthur v. Arthur, 54 So. 3d 454 (Fla. 2010).  In Arthur, the trial court authorized the wife to permanently relocate with the parties' child approximately twenty months after the final hearing.  Id. at 455.  The Florida Supreme Court held "that a best interests determination in petitions for relocation must be made at the time of the final hearing and must be supported by competent, substantial evidence."  Id. at 459.  The Court reasoned that such a "prospective-based" analysis is unsound because section 61.13001(7), Florida Statutes (2006), which sets forth the various factors a trial court must consider in reaching a determination on a parent's request for permanent relocation, "could change within the extended time period given by the court before relocation."  Id.  In contrast to Arthur, this case does not concern the statutory factors at issue where one parent seeks to permanently relocate with a child, but rather, only where P.L. and M.L. should go to school in the next academic year.

Next, the wife argues that the trial court erred when it determined that there was sufficient competent evidence that the father had the financial resources to place the children in Westminster in August 2018. Specifically, the wife argues that, pursuant to Herman v. Herman, 170 So. 3d 833, 833 (Fla. 3d DCA 2015), the trial court must be presented with financial information before it can make the requisite findings to support an obligation to pay for private school. We find the wife's argument on this point without merit. Herman and Musser v. Watkins, 752 So. 2d 141, 142 (Fla. 2d DCA 2000), upon which Herman relies, stand for the proposition that a court cannot order a parent to contribute to private school expenses unless it finds, among other things, that the party has the ability to pay. Here, the trial court is not imposing a private school expense obligation; rather, the father is *volunteering* to pay the tuition and expenses for Westminster. Regardless, the father testified as to his ability to pay the private school expenses by obtaining a loan from a friend, stating that once his support obligations are eliminated, he will be able to pay for the school without a loan. This evidence was unrebutted, and it was within the province of the trial court to determine the father's credibility on this point. The trial court's finding that "the Father/Former Husband has made the necessary arrangements and has the financial wherewithal to satisfy this obligation" was based upon competent, substantial evidence, and we find no error in the trial court's finding.

The mother also asserts that the trial court's order interferes with her religious beliefs and orders her to enforce the religious beliefs of the husband. It is true that a trial court may not preclude a parent from practicing his or her religion or from influencing the religious training of a child inconsistent with that of the other parent. Steinman v. Steinman, 191 So. 3d 954, 956 (Fla. 4th DCA 2016); see also Abbo v. Briskin, 660 So. 2d 1157, 1161 (Fla. 4th DCA 1995) ("Section 61.13 commands parents to confer on all major decisions affecting the welfare of their child and to reach an agreement as to any required decision. When the matter involves the religious training and beliefs of the child, we do not agree that the court may make a decision in favor of a specific religion over the objection of the other parent."); Mendez v. Mendez, 527 So. 2d 820, 820 (Fla. 3d DCA 1987) (affirming a trial court's custody determination when, in ruling, the trial court "conscientiously avoided any interference with the right of the non-custodial parent to practice her religion and avoided the imposition on her of an obligation to enforce the religious beliefs of the father").

The mother's testimony below, however, shows that her principal objection to Westminster was on an educational basis and that she was not completely opposed to a Christian-based school for the children. The mother testified on direct examination that she objected to Westminster because, "It is a Christian-based education system and I don't believe that's important for the children's

8

education." On cross-examination, the wife reiterated, "I do not think it is necessary for them to attend Bible study every day as one of their classes." On further cross examination, when asked if she would "object to any church associated or religion based school," the mother responded, "Not necessarily." Further, when asked the question of "What we are talking about is whether they study the Bible?" the mother responded, "What we are really talking about is their education." Thus, the mother's testimony establishes that her objection to Westminster was not over its religious affiliation or any conflict with her religious beliefs but instead the children's overall education. Additionally, the statement in the Order that requires the mother to "cooperate with and fully support the children's applications to Westminster Christian School and their subsequent enrollment, if accepted," when read in context, is a direction to cooperate in the application and enrollment process and is in no way a directive that the mother enforce the father's religious beliefs over her own when the children are with her. We therefore find that the trial court did not abuse its discretion.

Finally, the mother argues that the trial court erred in denying her Motion for Contempt, in which she asserted that the husband violated the shared parental responsibility provision in the Final Judgment of Dissolution of Marriage when he took the parties' son to Westminster, without the mother's knowledge or consent, to have him tested to determine eligibility for entrance to the school. The mother

9

fails to cite to any case law standing for the proposition that it is a violation of shared parental responsibility to take a child for academic testing. Moreover, the father did not withdraw P.L. from his school and admit him to another; he simply took P.L. for an admission assessment test. Cf. Sabatini v. Wigh, 98 So. 3d 245-244 (Fla. 1st DCA 2012) (affirming trial court's finding that mother was in contempt of shared parental responsibility provision in final judgment where two days prior to start of the school year mother unilaterally enrolled child in a school seventy miles from father's home). "Under Florida law, '[t]here is nothing that *requires* a trial court to hold a person in contempt'" and we therefore find that the trial court did not abuse its discretion in denying the mother's motion for contempt. Brooks v. Brooks, 164 So. 3d 162, 163 (Fla. 2d DCA 2015) (emphasis in original) (quoting Milton, 113 So. 3d at 1040).

Accordingly, for the foregoing reasons, we affirm the trial court's Order.

This opinion shall take effect immediately notwithstanding the filing of any post-opinion motions.

Affirmed.

10