# Third District Court of Appeal

## State of Florida

Opinion filed February 19, 2025.
Not final until disposition of timely filed motion for rehearing.

---

No. 3D24-1611
Lower Tribunal No. 20-3659-FC-04

---

**Leslie G. Greenwood,**
Appellant,

vs.

**Drew A. Greenwood,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Marlene Fernandez-Karavetsos, Judge.

Abramowitz and Associates, and Jordan Abramowitz, for appellant.

The Carlyle Appellate Law Firm, and John N. Bogdanoff (Orlando), for appellee.

Before FERNANDEZ, MILLER and GOODEN, JJ.

FERNANDEZ, J.

Leslie Greenwood ("Mother") appeals the trial court's "Temporary Order Granting Father Ultimate Decision Making and Denying Father's Verified Motion to Compel Mother to Sign the Re-enrollment Contract," entered in favor of Drew Greenwood ("Father"). Finding the Mother's due process rights were violated, we reverse the temporary order and remand for further proceedings.

The underlying case is a post judgment domestic relations action regarding parental responsibility concerning the Minor Child's (G.W.G.) education. An Amended Final Judgment of Dissolution of Marriage was entered on February 2, 2021. The Final Judgment adopted a Marital Settlement Agreement and Parenting Plan dated December 19, 2020. The Marital Settlement Agreement provides, "There shall be shared parental responsibility of the Minor Child as more specifically set forth in the Parenting Plan attached as Exhibit 'A'." The Parenting Plan under "Shared Parental Responsibility" states, "It is in the best interests of the child that the parents confer and jointly make all major decisions affecting the welfare of the child. Major decisions include, but are not limited to, decisions about the child's education "

The Mother filed a Petition for Relocation. In response to the Mother's petition, on February 12, 2024, the Father filed his answer and counter-

petition for modification, in part seeking to change parental responsibility over education from shared parental responsibility to the Father having ultimate decision-making authority over the Minor Child's education. On August 8, 2024, the trial court entered its final judgment denying the Mother's Petition for Relocation and further denied the Father's Petition for Modification, as to his request for ultimate decision-making authority of the Minor Child's education.

The Minor Child is in kindergarten, and under the terms of the Parenting Plan, he was to attend a public kindergarten at an elementary school located near the Mother's residence in Miami-Dade County, Florida, unless otherwise agreed upon by the parties.[1] However, the Parenting Plan provided that the Minor Child may attend a private pre-school so long as both parents agreed.

The Father desired to re-enroll the Minor Child at St. Philip's Episcopal School, but the Mother would not give her consent. The trial court denied Father's Emergency Motion to Compel Former-Wife to Sign Re-Enrollment Contract for Child's School; or, in the Alternative, For Order Authorizing Minor Child's School Re-enrollment at St. Philip's Episcopal School for the

---

[1] The Mother no longer resides in Miami-Dade County, so this term is no longer applicable.

2024/2025 Academic Year. The Father circumvented the order when he attempted to re-enroll the Minor Child by signing the Re-Enrollment Contract without the Mother's consent. Despite the Mother's concern about St. Philips, the trial court ordered that the Minor Child would remain at St. Philips for the 2024-2025 Kindergarten year.

The Mother sought rehearing of the trial court's denial of the Final Judgment for Relocation. After a hearing on the motion, the trial court denied rehearing as to the Mother's request for the Minor Child to relocate to Gainesville and granted rehearing as to a long distance parenting plan, reservation of attorney's fees award, and striking the portion of the final judgment that affords decision making to the parenting plan coordinator. The Final Judgment denying relocation is pending appeal under case number 3D2024-1585.

Five days after the trial court entered its Final Judgment on Relocation and denied the Father's Petition for Ultimate Decision-Making Authority regarding education, on August 13, 2024, the Father filed his Verified Emergency Motion to Compel Mother to Sign Re-Enrollment Contract. The Father claimed that without the Mother's signature on the re-enrollment contract, St. Philips would not admit the Minor Child to the school.

4

During the hearing on the motion, the trial court stated that it could not order the Mother to sign the contract. At the suggestion of Father's counsel, the trial court agreed that it could issue an amended addendum to the final judgment granting the Father ultimate parental reasonability for the school year "only as it relates to enrollment for this calendar year." However, the school's attorney was not present at the hearing, and the hearing concluded with plans to speak to the school's attorney before the order was issued.

On the same day of the hearing, August 13, 2024, the Trial Court entered an order entitled, "Temporary Order Granting Father Ultimate Decision Making and Denying Father's Verified Emergency Motion to Compel Mother to Sign the Re-Enrollment Contract." In the order, the trial court provided the following ruling:

> [T]he Court advised counsel to contact counsel for the school and call when he was on the telephone. Thereafter, the continuation of the hearing continued with both counsel for Father, counsel for Mother, and counsel for the school.
>
> Counsel for the school advised the Court that the school's concern is the continuing duty the school would have to confer with each parent if the Mother failed to sign the re-enrollment contract. He referenced the going of field trips, for example.
> . . .
> In order to effectuate the orders set forth in the Final Judgment, it has now become necessary to award to Father **temporary ultimate decision making as it relates to enrollment of G.W.G. in St. Philip's Episcopal School and decisions on the child's attendance at school events and activities, without the need for cooperation by Mother.** It is in the best interest of

5

G.W.G. for stability and continuity to remain at the school he attended the last two school years, and it would be a detriment to G.W.G. if he were not enrolled in the school where he thrived. Mother shall have full access to the school portal and to the teachers. Mother shall be allowed to participate in all parent-teacher conferences and school events, if she chooses to do so. This temporary order shall remain in effect for the 2024-2025 school year only and does not extend to the decision on what school G.W.G. should attend hereafter. The Final Judgment specifies that a parenting coordinator shall make those decisions if the parents are unable to agree.

This Temporary Order shall remain in effect until such time as it is modified by future Court order.

(Emphasis added).

The Mother filed a Motion to Vacate Temporary Order Granting Father Ultimate Decision Making. The parties were unable to obtain a hearing on the Mother's Motion to Vacate prior to the 30-day deadline to file an appeal from the temporary order. The Mother thus filed this appeal, as the motion to vacate would not otherwise toll the time for an appeal.

On appeal, the Mother argues, "The trial court erred when it violated the Former Wife's due process by awarding the Former Husband ultimate decision making authority/sole parental responsibility over all aspects of the Minor Child's education without sufficient legal basis."

"Trial courts are afforded broad discretion in child custody matters. However, we review a claim of deprivation of due process *de novo*." Logreira v. Logreira, 322 So. 3d 155, 158 (Fla. 3d DCA 2021) (citations omitted).

6

Upon review of the record, we find that the trial court violated the Mother's due process rights by awarding the Father ultimate decision making authority over the Minor Child's education when: 1) the Father did not request this relief in the motion; 2) the Father previously requested ultimate decision making over education, which was denied; 3) the parties did not discuss this option in the hearing; and 4) the Mother did not receive notice or an opportunity to be heard regarding this change in the parenting plan and final judgment.

During the hearing, the parties discussed the option of the trial court granting the Father ultimate decision making as to <u>enrollment only</u>, while the order on appeal granted the Father ultimate decision making as to enrollment and "decisions on the child's attendance at school events and activities, without the need for cooperation by Mother." Following this ruling that cooperation by the Mother is unnecessary, the trial court stated in the order, "Mother shall have full <u>access</u> to the school portal and to the teachers. Mother shall be allowed to <u>participate</u> in all parent-teacher and school events, if she chooses to do so." (Emphasis added). Though the trial court does attempt to limit Father's ultimate decision making to enrollment and attendance at school activities and events, given the context of removing the Mother's need for cooperation from these decisions and the trial court's

7

choice to limit Mother's activity to "access" and "partcipat[ion]" without including any mention of decision making, we find that the trial court granted the Father ultimate decision making as to the Minor Child's education. If the order does allow for some decision making by the Mother not anticipated by this Court, the order still goes beyond what was requested in the motion and discussed in the hearing.

The trial court relies on <u>Lane v. Lane</u>, 254 So. 3d 570 (Fla. 3d DCA 2018), where this Court found that it was proper for the trial court to resolve an impasse by ordering a parent to cooperate in the enrollment application and school process. <u>Id.</u> at 571. The trial court in the present case stated that requiring the Mother to sign the re-enrollment contract "goes a step beyond cooperation and will contractually bind Mother to certain acts." However, in avoiding one pitfall, the trial court stepped into another. Where in <u>Lane</u>, the mother was ordered to cooperate, here the Mother's cooperation was found wholly unnecessary as the trial court granted the Father ultimate decision-making authority over enrollment and "decisions on the child's attendance at school events and activities, <u>without the need for cooperation by Mother</u>." (Emphasis added). Such relief was not requested in the Father's motion, was previously denied, and was granted without the Mother receiving notice or

8

an opportunity to be heard regarding this pivotal change in the parenting plan and final judgment.

This case is very similar to the facts in Logreira, 322 So. 3d 155, where this Court reversed a trial court's order granting the father ultimate decision-making authority when the mother was not given notice and the opportunity to respond. As in Logreira, the order on appeal "dramatically shifted the existing framework of the parties' parenting plan." Id. at 158. Therefore, the Mother "was entitled to minimal due process protections prior to entry." Id. During the hearing in the present case, the trial court considered the solution of giving the Father ultimate decision making as it relates to enrollment only, as would have been supported by Lane. However, granting the Father ultimate decision-making power over education was quite unexpected given the fact that the Father had requested this in a previous motion, and it was denied. Also, as in Logreira, the Father did not request ultimate decision making over education in the motion related to the order. Id. at 158-59. Instead, the Father requested the trial court order the Mother to simply sign the contract, which the court ultimately denied. Lastly, as in Logreira, "the record is devoid of any indication [that] the order was a necessary corollary to [school] enrollment." Id. at 159. The trial court in the present case explained the school's position in the order, but there is nothing in the record

outside the order evidencing the need for such a ruling. The attorneys may have come together to discuss the school's policy with the school's attorney, but "the argument or proffer of counsel, not rendered under oath, absent a clear stipulation, does not constitute admissible evidence." Id. "[O]n the face of the record, the disputed order impermissibly grants relief beyond that requested in the pleadings." Id.

The trial court was in fact in a classic "between a rock and a hard place" scenario. We recognize the difficulty that our Family Court judges experience in dealing with the unique needs of children and families in divorce proceedings and commend the trial court for its Herculean efforts. However, the order went beyond what the Father requested, what was discussed in the hearing, and what the parties anticipated, especially in light of the trial court denying the Father's previous motion for ultimate decision making as to education. Despite the best interest of the child implications, the Mother should have been afforded notice and an opportunity to respond to this dramatic shift in the parenting plan.

Finding that the Mother's due process rights were violated, we reverse the temporary order and remand for further proceedings.

Reversed and remanded.